HARRY KRAFT, Appellant, v. ARMANDO ARAUJO and Others, Respondents.

First Department, May 12, 1933.

*Martin J. Desmoni*, for the appellant.

*Arthur F. Driscoll* of counsel [*O'Brien, Malevinsky & Driscoll*, attorneys for Walter Winchell; *Rieger & Albert* (*Maurice L. Albert* and *Alexander Baumstein* with *Arthur F. Driscoll* on the brief), attorneys for Amando Araujo; *Edward A. Robertson*, attorney for Daily Mirror, Inc.], for the respondents.

SHERMAN, J. If the article set forth in the complaint as having been published in the newspaper issued by the defendant Daily Mirror, Inc., be actionable, all defendants may be held in damages, the corporate defendant for publishing it, defendant Winchell, editor of that newspaper, as well as defendant Araujo, for composing the matter for publication and having it published in that newspaper.

The complaint states that in 1927 plaintiff was employed as the head of the art department of J. P. Muller & Co., which was then engaged in the advertising agency business in the theatrical field. At that time defendant Araujo was likewise an employee in the same department. Plaintiff was well known and had established a reputation for honesty and fair dealing. Defendants published an article regarding him, which he claims tended to bring him into hatred and hold him up to ridicule and contempt. Pleading that the article refers to defendant Araujo (designated in the article as

Armando) while he was working for the same advertising agency as that of which the plaintiff was the head, he sets it forth as follows: " Interesting tale about Armando, the clever caricaturist from Mexico . . . He's come up rapidly in the last five years — from $30 per week to a G . . . When he worked in a theatrical advertising agency on 42nd Street five years ago — the head of the Art Department took a week off when a baby arrived in his shack. Drunkee, whoopee and such fun! — So when Armando's first child came and he was three hours late that glorious day — the head of the art dep't fired him. . . Nice that was . . . No job, no coin, no rent, one landlord, one wife and one child — equals what? . . . So what happened? . . . So five years later, which was the other day, Armando, the head of an art dep't himself at $1,000 per, was at his desk, when who should ankle in, shabbily attired with a sad face, but his old boss who fired him. ' I know I was a rat to do that to you, Armando ' said the fellow ' but I've lost my job. I have no money and my wife is having another baby ' . . . So what did Armando do? You guessed it . . . He got the guy who made him so unhappy, a job . . . And why did he give that guy a job? . . . Because on the same morning Mrs. Armando had another child and Armando thought the baby would like it if he did."

The word " rat," as frequently used in current conversation and publications, has been variously defined in dictionaries as meaning a person " in contempt, one who is regarded as base and sneaking in conduct;" and " a person who is considered to act in some respects in a manner characteristic of rats — a renegade;" " a sneak, informer, turncoat;" " a mean, skulking fellow." The word is used in objurgation and has come to be regarded as an opprobrious epithet. In the popular vernacular, it is a term which a jury may find to be descriptive of one who has reached so low a state of degradation as to be a virtual outcast. Assuming, as we must, the falsity of the article, the plaintiff stands self-accused of possessing such repugnant qualities. Unquestionably, a jury may award damages if they conclude that the article was written of and concerning plaintiff, and that, in common speech, it tends to hold him up to public ridicule and scorn. (*Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144, 155; *Corrigan* v. *Bobbs-Merrill Co.*, 228 id. 58, 65.)

The pleading is sufficient under rule 96 of the Rules of Civil Practice to enable plaintiff to show that it was published concerning him.

The Special Term dismissed the complaint upon the theory that the article was " a harmless joke." Whether it be such is for the jury to determine upon a trial if defendants shall so contend.

The orders appealed from should be reversed, with twenty dollars costs and disbursements, and each defendant's motion denied, with ten dollars costs, with leave to defendants to answer within twenty days from service of order upon payment of said costs.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Orders reversed, with twenty dollars costs and disbursements, and motion of each defendant denied, with ten dollars costs, with leave to defendants to answer within twenty days from service of order upon payment of said costs.